ARTHUR A. KEMP, ADMINISTRATOR OF THE ESTATE OF MICHAEL JOHN KEMP, ALSO KNOWN AS JOHN KEMP, DECEASED, APPELLANT, v. DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, RESPONDENT.

Submitted July 9, 1923—Decided November 19, 1923.

K., a brakeman and member of a drill crew in a freight yard of a railroad company, had assisted in placing a draft of cars at an ice house. in the freight yard, to be iced, K. was then instructed by the conductor to throw a switch some two thousand feet distant to permit the cars to be placed on a certain track. K. threw the switch and then remained on the track over which the cars were to pass, although no duty required him to do so, and was struck by the cars and killed. K.'s administrator sued the railroad company for damages. alleging that the railroad company was negligent in failing to have an employe on the leading car with a lantern (the time of the accident being at four-thirty A. M., on an August day) to warn K. of the approach of the train. The conductor at the trial testified that he had been instructed by the yardmaster to have a man on the rear

end of the train backing down "to keep from running into any-body coming down there, or anybody running into us coming out." Owing to the other brakeman of the crew having fallen asleep no one was stationed on the leading car in the move-ment of cars which killed K. *Held* (1) that the railroad com-pany was not negligent as it owed no duty of further warning to K., who had been informed of the movement the draft of cars would make: (2) that the failure to have a man stationed on the leading car was not the proximate cause of K.'s death, the proximate cause being the reckless conduct of K. in remain-ing on the track, with no duty to perform, when he knew that the draft of cars was to be shunted on the track on which he was standing.

On appeal from the Supreme Court.

For the appellant, *Emil J. Hoos* (*Winfield E. Angleman*, of counsel).

For the respondent, *Frederic B. Scott.*

The opinion of the court was delivered by

KATZENBACH, J.   This is an action instituted by the ad-ministrator of the estate of Michael John Kemp against the Delaware, Lackawanna and Western Railroad Company, to recover damages for the death of Kemp, who was an em-ploye of the railroad company. The action is brought under the Federal Employers' Liability act. At the trial held at the Union Circuit the plaintiff was nonsuited. From the judgment of nonsuit the plaintiff has appealed.

Kemp was a brakeman. On August 14th, 1920, he was a member of a drill crew working in the Cheektawaga yard of the railroad company, located near Buffalo, New York. The crew consisted of an engineer, fireman, a conductor named Smith, and two brakemen, Kemp and Kathen. This crew, about four-thirty A. M., on the day mentioned had charge of a train or draft of five cars comprising an interstate ship-ment. These cars were taken by the crew to an ice house in the yard to be iced. After placing the cars at the ice house, Smith, the conductor, ordered Kemp to "line the iron for

240    COURT OF ERRORS AND APPEALS.

Kemp v. Del., Lack. & /West. R. R. Co.    99 *N. J. L.*

sixteen"—that is, to throw a switch so that the cars, after being iced, could pass on the track known as track No. 16.

The switch to be thrown was some two thousand feet eastwardly from the ice house. Kemp walked to the switch and threw it, thus enabling the cars to pass to track No. 16. The switch when closed to traffic moving eastwardly showed a green light. When the switch was open to admit cars over the track it showed a yellow light. The yellow light, soon after Kemp had been ordered to open the switch, was visible at the ice house, indicating that the switch had been thrown by Kemp presumably in obedience to the order given him. Soon after the switch was thrown the cars were pushed by the engine towards track No. 16, cut from the engine, and passed to their destination on track No. 16.

A short time after this movement the body of Kemp was found on track No. 16 about seventy feet from the switch, badly mutilated, the head lying between tracks 16 and 17. There had been no other movement of cars at this point, so that the only inference which can be drawn from these facts is that Kemp, after throwing the switch, stood between the rails of track No. 16, and was struck by the draft of cars which were moving at the time at a speed of from four to five miles per hour. There was no duty which required Kemp to remain on the track after throwing the switch. Kemp had been informed by Smith, at the time of being given the order to throw the switch, that the cars were to be put on track No. 16. The plaintiff's testimony as to the occurrence of the accident was given by Smith. In addition to the facts stated, Smith testified that when he had entered the employ of the railroad company the yardmaster had instructed him to have a man on the rear end of the train backing down from the ice house at all times "to keep from running into anybody coming down there, or anybody running into us coming out." It also appears that in making a movement of this character the conductor is usually stationed on the top of the leading car, while the second brakeman rides on the last car, which is nearest to the engine, so as to be in a position to cut off the draft of cars from the engine.

On the day of the accident there was no brakeman on the leading car, as the second brakeman, Kathen, had fallen asleep and could not be found by Smith when it was time for the movement to be made. This required Smith to be on the car next to the engine to cut the cars, leaving no one to stand on the leading car.

Upon the conclusion of the plaintiff's testimony counsel for the defendant moved for a nonsuit on three grounds—first, that the alleged negligence of the defendant was not the proximate cause of the death of deceased; second, the deceased assumed the risk of the happening of the accident, and third, there was no negligence of the defendant shown.

The motion was granted and a judgment of nonsuit subsequently entered.

The argument of the appellant is that the railroad company was negligent in shunting the cars to track No. 16 without having stationed on the top of the leading car a brakeman with a lantern to warn Kemp of the approach of the train. This neglect for which either Smith, who directed the movement of the train without this precaution being taken, or Kathen, who fell asleep, was responsible.

It would seem that the evidence in this case was insufficient to show a custom in the Cheektawaga yard to place a brakeman on the leading car in executing the train movement made in this case for any other purpose than to warn members of the public and employes not engaged in the movement of the train of its approach where their presence ought to be anticipated, as the only testimony on the subject is that of Smith, who stated that the purpose of placing the man on the leading car was "to keep from running into anybody coming down there, or anybody running into us coming out." This applies only to those who would have no knowledge of the proposed movement of the train. It does not apply to one who knew what the movement of the train was to be. Kemp had been informed that the cars at the ice house, which he had assisted in placing there, would be placed on track No. 16, and he had been directed to throw the switch to make the movement possible. He did so, and

242    COURT OF ERRORS AND APPEALS.

Kemp v. Del., Lack. & West. R. R. Co.    99 *N. J. L.*

then remained on the track over which the cars were to pass, when there was no duty for him to perform which required his presence on the track.

There is no evidence in the case which shows any custom that one possessed of the knowledge of Kemp as to the proposed movement of the train should be further warned. There was .then no duty on the part of the railroad company to have, so far as Kemp was concerned, a brakeman on the leading car. If the railroad company was under no such duty, then it was not negligent in its relations to Kemp, and the trial court was justified in nonsuiting the plaintiff on the ground of failure of proof of negligence, as negligence must be proved under the Federal Employers' Liability act to recover damages. *Foley* v. *New York, Ontario and Western Railroad Co.*, 97 *N. J. L.* 278.

The case of *Hines, Director General,* v. *Kesheimer's Administratrix,* recently decided in the Court of Appeals of Kentucky during the present year, and reported in 249 *S. W. Rep.* 1001, is identical in the facts presented with the case under consideration. Kesheimer was a brakeman. It was his duty to line up switches for the placing of cars upon certain tracks. He was, of course, informed of the destination of the cars before each movement. One night his conductor gave him orders for the placing of cars on a certain track. He lined up the switches. The conductor gave orders to the engineer to move the train. The cars were shunted toward the switch. A short while thereafter the deceased was found. He had been struck by or fallen from or under the draft of cars. Negligence was alleged in shunting the cars at night without any lights or employe on the cars to warn persons in the yard. A verdict was obtained. On appeal this was set aside. The court, in its opinion, said : "He ·[Kesheimer] was sent to set the switches in order to let these cars go on a certain track; he set the switches with the knowledge that the cars were coming, and it was certainly his duty, without further warning, to keep out of their way. We are therefore confident that there was no negligence toward deceased in failing to have lights or a man on

the end of these cars, although this would have been negligence to persons otherwise engaged and not thus informed, and whose presence ought to have been anticipated."

But there is another aspect of the case which seems to us controlling. Was there under the evidence any negligence of the defendant shown which was as a matter of law the proximate cause of Kemp's death? Assuming a custom to have been proved broad enough to include the duty of warning members of the drill crew of the movement of the draft by placing a brakeman with a lantern on the leading car, was the failure to do this the proximate cause of the accident? Damages to be recovered must always be the natural and proximate consequences of the wrongful act complained of. If a new force had intervened, which of itself is the cause of the accident, then the first must be considered as too remote. For the negligence to be the proximate cause it must be the natural and probable consequences of the negligent act which under the circumstances an ordinarily prudent person ought reasonably to have foreseen might probably occur as the result of the negligent act. Conceding Smith, the conductor, to have been negligent in directing the movement of the draft of cars to track 16 without a brakeman with a lantern on the leading car to give warning of the approach of the draft, and conceding the railroad company's full responsibility for the consequences of such negligence, Smith's act did not put Kemp in a place of peril. Kemp knew the train was coming on the track on which he was standing. He knew that if he remained on the track he would be struck. He had ample time to leave the track and place himself in a place of safety. After he threw the switch it was his subsequent reckless conduct in remaining upon the track in disregard of his own safety, when he knew the train was coming, which was the sole and proximate cause of the accident resulting in his death. Without Kemp's independent intervening human agency in either determining to remain in a place of danger or in omitting to remove himself from his dangerous position, no harm could have happened to him from what was done.

244 · COURT OF ERRORS AND APPEALS.

Kemp v, Del., Lack. & West. R. R. Co.    *99 N. J. L.*

For the foregoing reasons we think the motion to nonsuit was properly allowed.

There is one further ground of appeal argued by the appellant. The trial court overruled the following question put to the witness Smith: "Mr. Smith, would it be necessary for Kemp to go on these tracks if, after reaching the point of switch 16, he found that the switch itself needed some repairs?"

In view of the fact that the charge of negligence was confined to the failure to warn the deceased of the approach of the cars, no allegation being made in the complaint respecting any defect in the switch, or that Kemp was killed while in the act of making repairs thereto, the question was properly overruled. The question assumed as the foundation for the question a state of facts not proven. In was objectionable in this respect.

The judgment of nonsuit is affirmed.

KALISCH, J. (dissenting). I find myself unable to agree with the views expressed by the learned justice in the prevailing opinion that there was no evidence of negligence on part of the railroad company and that the death of the deceased was the result of his own negligence.

The uncontradicted testimony was that when cars were to be shunted during the night a brakeman was stationed on the leading car with a lantern. It appeared that in an early hour of the morning, when it was still dark, the crew of the cars to be shunted were at the ice house, some five in number, among whom were the deceased and the brakeman, Kathen, when orders were given to the deceased to go down and line up switch 16. This order was given in the presence of Kathen and the deceased. It was Kathen's duty to take a position on the leading car with a lantern while the cars were being shunted. Calvin Smith, who was the freight conductor in charge of the movement of the cars, gave the orders. He testified on this point: "I was instructed by the yardmaster to have a man on the rear end of the train backing down from the ice house at all times" with a lantern. "We never backed down from the ice house to sixteen switch without a man on the rear."

JUNE TERM, 1923. 245

*99 N. J. L.*     Kemp v. Del., Lack. & West. R. R. Co.

And on cross-examination the witness further testified to the effect that before the deceased went down to throw the switch and before the movement was made Kathen was present with his lantern lit and knew of the proposed movement of the cars. Now, the undisputed fact is that Kathen somehow or other disappeared and there was no man stationed on the rear of the car with a lantern to give warning during the movement which resulted in Kemp's death.

The prevailing opinion assumes, without any testimony which would fairly support such assumption, that the brakeman with a lantern was stationed on the leading car not for the purpose of warning a switchman who was sent and in the line of his duty went to set a switch and who, of course, knew that a particular train of cars was to be shunted onto a particular track, but only for the purpose of giving warning to members of the public who might be in the railroad yard or some other railroad employe not engaged in the movement. Members of the public would be trespassers in the yard, to whom the railroad company would not owe any duty except to refrain from doing willful injury, unless they were especially invited there by one who was authorized to do so. The supposition that any member of the public might be in the railroad yard during the night time is so unsubstantial as to probability that it precludes the notion that the object of a brakeman on a leading car was to protect the public.

The obvious purpose of stationing a brakeman with a lantern on the leading car was manifestly for the purpose of protecting those persons who had a right to be in the railroad yard, irrespective of their knowledge that trains were being moved and shunted down the tracks. Knowledge of the fact that a train of cars is to be shunted can only be properly considered on the question whether there was an assumption of the risk by the employe or person injured of the particular danger in being upon or in crossing the track upon which the movement of the train is to take place.

The learned writer of the prevailing opinion says:

"There is no evidence in the case which shows any custom that one possessed of the knowledge of Kemp as to the pro-

246    COURT OF ERRORS AND APPEALS.

Kemp v. Del., Lack. & West. R. R. Co.    *99 N. J. L.*

posed movement of the train should be further warned. There was then no duty on the part of the railroad company to have, so far as Kemp was concerned, a brakeman on the leading car. If the railroad company was under no such duty then it was not negligent in its relation to Kemp, and the trial court was justified in nonsuiting the plaintiff on the ground of failure of proof of negligence, as negligence must be proved under the Federal Employers' Liability act to recover damages."

The fallaciousness of this reasoning is the direct consequence of overlooking the fact that Kemp's knowledge of the movement of the train was fortified by the further knowledge that the moving train would have a brakeman stationed on the leading car with a lantern, so that the approach of the train could be discerned in the dark by him.

The fact that Kemp had knowledge that the train was to be moved can have no proper bearing on the question whether or not the conduct of the conductor, in sending down the cars without the brakeman with a lantern, was a negligent act, but such conduct might have a bearing on the question whether or not Kemp, by his negligence, contributed to his injury and death, which, of course, is no bar to a right of recovery under the federal statute.

Now, if common prudence dictated that in order to protect the lives of its employes a brakeman with a lantern should be stationed on the leading car, the failure to do so would be negligence. But if this care or caution is not adopted by the employer, the employes who work with the knowledge of such dangerous conditions take the risk of injury flowing therefrom. But it is a novel and startling proposition that a negligent act may be such as to one class of persons and nonnegligent under like circumstances to another. I can readily conceive that a negligent act may be actionable as to one class of persons and not to another. A master's negligent act does not become a non-negligent act because a servant who has knowlêdge of his master's negligent conduct prefers to remain in his service and work at machinery which both

master and servant knew was out of repair and in a dangerous condition. The servant, if injured, would be held to have assumed the risk of injury resulting from his master's negligence, whereas if a servant were put to work at the same machinery without any knowledge of its defective condition, and was injured, he would be entitled to recover upon the ground of negligence.

In the present case the act of sending down the train was not in itself negligent conduct. The negligence consisted in moving the train without a brakeman on the leading car, as a lookout with a lantern, so that any employe of the company would be apprized of the approach of the train.

The view of the majority of the court as expressed in the opinion is that conceding the failure of the defendant to have stationed a brakeman with a lantern on the leading car was negligent conduct, yet, nevertheless, the judgment of nonsuit can be properly and is sustained upon the controlling circumstance, that is, there was not "under the evidence any negligence of the defendant shown which was as a matter of law the proximate cause of Kemp's death."

Beven, in volume one of his admirable work on "Negligence" (at *p.* 93), under the caption of "Causal Connection," says: "What is a *proxima causa,* or immediate cause in law, is a matter so largely dependent on the facts of the individual case that any formula of the general principle seems unattainable."

Proximate cause is ordinarily a mixed question of law and fact, as in the case here. The conductor of the moving train testified that on the morning in question a brakeman stationed on the leading car would have had a view of two hundred feet ahead of him, and that at the rate of speed the train was moving it could, upon signal given, have been stopped within forty feet. Now, under such a state of facts a jury would have been warranted in finding the proximate cause of plaintiff's decedent being run over and killed was the failure of the defendant to have a brakeman, with a lantern on the leading car, which would have been an in-

dication to the decedent that the train was moving, its position on the tracks, its nearness or remoteness from the place where the decedent was, and, furthermore, that a brakeman, in the proper discharge of his duty could have observed, by the light of his lantern, in ample time, the whereabouts of the decedent, and thus have stopped the train and avoided the accident.

It is said that the conductor's act did not put Kemp in peril. Whether it did or not was a jury not a court question, under the circumstances of the case. The prevailing opinion then says: "Kemp knew the train was coming on the track on which he was standing. He knew if he remained on the track he would be struck. He had ample time to leave the track and place himself in a place of safety. After he threw the switch it was his subsequent reckless conduct in remaining upon the track in disregard of his own safety, when he knew the train was coming, which was the sole and proximate cause of the accident resulting in his death. Without Kemp's independent intervening human agency in either determining to remain in a place of danger or in omitting to remove himself from his dangerous position no harm could have happened to him from what was done."

This is clearly a *non sequitur;* for when Kemp discovered that he was in peril from an object moving towards him in the dark it might very well have been that he made an effort to save himself, but was too late.

A tort-feasor who creates a peril which suddenly overtakes and injures one cannot escape the consequences of such wrongful act upon the plea that the party injured might by the use of safer means have avoided the mishap. And even if I am wrong in this, nevertheless, the question whether the injured party could have avoided his hurt by the exercise of reasonable care would be a jury and not a court question.

It seems to me that the court is here assuming a function which strictly belonged to the jury. There was not a spark of testimony which tended to show under what circumstances Kemp met with his death. The only circumstance upon

which the excerpt of the opinion of the majority is based is that Kemp's body was found in a mangled condition a rail length—about seventy feet east of the switch, "one of his legs, one of his arms and the lower part of his body laid in the middle of track sixteen," "about a rail length from the frog, east of the frog, and the upper part of his body and his head and one arm laid in between sixteen and seventeen."

While it is true that Kemp knew a train would be coming on track sixteen he was not expected to know that it would steal upon him along in the dark without a light and a look-out. It is a pure surmise that he was standing on the track when struck. It is consistent with the surrounding circumstances that Kemp, not seeing any train approaching, walked not on track sixteen, but between tracks sixteen and seventeen, to ascertain what caused the delay, at least a jury might have properly drawn such an inference, for it was more than fifteen minutes after Kemp had gone to throw the switch that the train was started on its journey. It is also a mere surmise that Kemp had ample time if he observed the train to reach a place of safety. It is assumed, without any testimony to support the assumption, that Kemp's duty ended when he threw the switch. Ordinarily, after a switch has been opened it is the duty of the switchman to see that it is closed, for the failure to do so might lead to disastrous consequences to other trains with their human freight, using the tracks, operated by the switch.

It is further said that without Kemp's independent intervening human agency, as shown by his conduct, no harm could have come to him. Of course, if he had not been there he could not have been hit. Under the doctrine enunciated no person could recover for injuries through the negligence of another, no matter how prudent or careful his conduct, so long as he was an independent intervening human agency. If his conduct was careless or reckless and such conduct co-operated with the negligent act of the defendant he would be guilty of contributory negligence, which is no bar to the action. To hold that the defendant was free from negligence and that it was Kemp's negligence which was the sole pro-

250 COURT OF ERRORS AND APPEALS.

ducing cause is to assume without the slightest proof that he willfully placed himself upon the tracks of the defendant for a suicidal purpose.

The law upon that subject as settled in this state is: "No presumption of negligence in the decedent arises in any such action from the mere occurrence of the accident. The facts and circumstances as a basis for nonsuit must be of such probative force, in the evidence of the plaintiff, that contributory negligence so conclusively appears as to exclude any other legitimate inference or conclusion. The facts and circumstances, where they are of doubtful import, and difficulty arises as to the solution of the question whether contributory negligence exists or not, are for the consideration and determination of the jury." *Pennsylvania Railroad Co.* v. *Middleton,* 57 *N. J. L.* 155; *Suburban Electric Co.* v. *Nugent,* 58 *Id.* 658.

The burden rested upon the defendant to establish that the plaintiff's intestate was guilty of negligence which was the sole producing cause, which under the facts and circumstances of this case presented a jury question. It is a fair and reasonable inference from the testimony that if there had been stationed a brakeman, with a lantern, on the leading car, Kemp would not have met with his injury and death, and that it was this omission of duty on part of the defendant's servant which was the producing cause of the accident.

The question of assumption of risk, though discussed in the briefs of counsel, is not touched upon in the prevailing opinion, and the reason for this seems plain. It cannot be said, with any show of reason, that Kemp assumed a risk of danger which was not obvious or made known to him. He was at the ice house when Kathen was there with his lantern, and whose duty it was to take his position upon the leading car. Kemp had the right to expect that this duty would be performed and that the train would not be sent down unless so equipped. The moving of the train without a brakeman with a lantern on the leading car was negligence which was unexpected and unforeseen by Kemp, and this case therefore falls within the control of *Reed, Administratrix of the Estate*

of Leo C. Reed, deceased, v. *Director General of Railroads,*
258 *U. S. Sup. Ct.* 92, 96; ~66 *L. Ed.* 480, and, therefore,
the judgment of nonsuit should be reversed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-
CHARD, PARKER, BLACK, KATZENBACH, WHITE, HEPPEN-
HEIMER, GARDNER, JJ.　9.

*For reversal*—KALISCH, ACKERSON, VAN BUSKIRK, JJ.　3.